## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

AARON ROTHENBERG,

     Plaintiff,

v.                                Case No. 3:23-cv-93-MMH-LLL

FEDEX CORPORATION,

     Defendant.

_____

## **O R D E R**

**THIS CAUSE** is before the Court on FedEx Corporation's Motion to Dismiss Plaintiff's Complaint and Incorporated Memorandum of Law (Doc. 7; Motion) filed on February 14, 2023.  Plaintiff Aaron Rothenberg, proceeding pro se, initiated this action on January 26, 2023, by filing his Complaint and Incorporated Memorandum of Law (Doc. 1; Complaint).  In the Motion, Defendant FedEx Corporation (FedEx) moves to dismiss this action for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure (Rule(s)).  Id. ¶¶ 18–27.  FedEx also argues that the action should be dismissed for lack of personal jurisdiction pursuant to Rule 12(b)(2).  Id. ¶¶ 28–30.  In support of the jurisdictional challenge, FedEx attaches the Declaration of Shahram A. Eslami (Doc. 7-1; Eslami Declaration).  Rothenberg filed his Response to FedEx Corporations [sic] Motion to Dismiss

Plaintiff's Complaint and Incorporated Memorandum of Law (Doc. 9; Response) on March 6, 2023, and submitted a list titled Subsidiaries of FedEx Corporation (Doc. 9-1; Subsidiary List) in support of his assertion of personal jurisdiction. Accordingly, this matter is ripe for review.

## I.      Background[1]

Rothenberg has been a professional driver since 2018.   Complaint ¶¶ 1–2.   He frequently encounters FedEx's "fleet drivers, delivery drivers, and contractors" on the road and at FedEx's "sites" around the country, including in Ocala, Florida, and Miami, Florida.   Id. ¶¶ 3–4.   In these encounters, Rothenberg alleges that FedEx engages in a continuous and multi-faceted conspiracy to assault, defame, humiliate, injure, intimidate, and surveil him, including attempts to "extort self-harm by way of [Rothenberg's] suicide."   See id. ¶¶ 4–5.   He contends that this conspiracy includes "personnel from the top to the bottom" of FedEx's organization, including "[m]anagement personnel at every level."   Id. ¶ 8.   Rothenberg describes "defamatory statements" that have been screamed at him and shared "internally within [FedEx's] organizational structure" to "cause public contempt" for him.   Id. ¶¶ 12–14. He also states that he has "been assaulted, both verbally and through gesture"

---

[1] In considering the Motion, "the court reviews a plaintiff's pro se allegations in a liberal fashion, accepts all factual allegations in the complaint as true, and evaluates all reasonable inferences derived from those facts in the light most favorable to the plaintiff." See Freeman v. Fine, 820 F. App'x 836, 838 (11th Cir. 2020).   As such, the facts recited here are drawn from the Complaint and may well differ from those that ultimately could be proved.

at distribution centers, at hotels, at truck stops and rest areas, on the road, and in his home.[2]   Id. ¶ 16.   Rothenberg alleges that he has experienced this "seemingly nonstop spree of assault" since August of 2021, and describes a wide array of offensive conduct.   Id. ¶¶ 16–18.   In addition, he believes FedEx makes "constant attempts" to keep him "under surveillance" wherever he goes, and then releases his private information to the public.   Id. ¶¶ 19–27. According to Rothenberg, FedEx does this to deliberately offend him, invade his privacy, and "torment [him] with the idea that the concept of a private life does not exist."   Id. ¶ 26.

---

[2] On this point, Rothenberg refers to camera footage he submitted in a related case pending before the undersigned.   See Complaint ¶¶ 10–11 (describing physical materials filed in Rothenberg v. Knight Swift Trans., No. 3:21-cv-1213-MMH-LLL); Response ¶¶ 25–30 (same).   In that case, Rothenberg filed several hard drives containing "over four terabytes of body camera footage" that, according to him, total "hundreds of hours" and show "a huge number of instances" of this behavior.   Response ¶¶ 25, 27, 29.   Rothenberg correctly asserts that while "ordinarily a court may not consider facts not alleged in the complaint," there is an exception when "the document is referenced in the complaint, central to the plaintiff's claim, and of undisputed authenticity."   See id. ¶ 27 (citing Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005)).   However, the Court is not convinced that this principle applies here because the videos are not part of the record in this case at all, and even if they were, it is unclear that the videos—as opposed to the events they purportedly depict—are "central" to the Complaint.   Cf. Day, 400 F.3d at 1275–76 (holding that the text of a contract was "central" to a complaint because it was "a necessary part of [the plaintiff's] effort to make out a claim").   And while the Court has access to the footage, it is not apparent that FedEx (who is not a party to Rothenberg's case against Knight Swift) is able to evaluate its authenticity.   The Court has nonetheless viewed portions of this footage, but was unable to identify any of the conduct Rothenberg describes.   Rothenberg does not provide timestamps or other citations to specific videos showing the conduct, and the Court has not endeavored to view the "hundreds of hours" of footage in its entirety.   In evaluating FedEx's Motion, the Court nonetheless assumes that Rothenberg's description of the videos' contents is accurate.   See Freeman, 820 F. App'x at 838.   For reasons the Court will discuss, however, this does not affect the result.

In his Complaint, Rothenberg brings six claims against FedEx.   He does not number them as separate counts, but for clarity and ease of reference the Court will do so.   In Count I, Rothenberg alleges a claim of defamation based on false statements he believes FedEx is spreading about him.   Id. ¶¶ 12–15. In Count II, Rothenberg asserts a claim of assault based on verbal and physical threats.   Id. ¶¶ 16–18.   In Counts III and IV, he brings claims for invasion of privacy under two theories: intrusion upon seclusion and public disclosure of private facts, respectively.[3]   Id. ¶¶ 19–27.   In Count V, he raises a claim of intentional infliction of emotional distress.   Id. ¶¶ 28–30.   And, in Count VI, he asserts a conspiracy claim based on the internal and external conduct of FedEx employees.   Id. ¶¶ 31–33.   Rothenberg seeks relief in the form of compensatory damages, punitive damages, and a permanent injunction to prevent future tortious conduct.   Id. ¶¶ 34–40.

FedEx now seeks dismissal of Rothenberg's Complaint, arguing that he fails to plead the elements of these causes of action, and that the allegations are too vague and ambiguous to apprise FedEx "of the factual basis for its alleged

---

[3] Because Rothenberg places these two claims under a single heading, it is not clear whether he intended to plead two counts of invasion of privacy or a single count consisting of two claims.   Construing the Complaint liberally, the Court will assume that Rothenberg intended these to be separate counts because he placed them under separate subheadings. The Court notes that if the two claims were set forth in a single count, the Complaint would "likely run[ ] afoul of Rule 10(b)."   Weiland v. Palm Beach Cnty. Sheriff's Off., 792 F.3d 1313, 1322–23 & n.13 (11th Cir. 2015) (describing "the sin of not separating into a different count each cause of action or claim for relief").

liability, thereby preventing FedEx Corporation from preparing a defense." Motion ¶ 14. FedEx also argues that Rothenberg "has sued the wrong entity" because FedEx does not have sufficient minimum contacts with Florida to satisfy Due Process. Id. at 10–12. Rothenberg responds that he has sufficiently pleaded the elements of his claims, and maintains that FedEx is "the correct legal entity" for this action. Response at 10.

## II.   Standard of Review

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508, n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. BellSouth Telecomm., 372 F.3d 1250, 1262–63 (11th Cir. 2004) (citations omitted). Indeed, while "[s]pecific facts are not necessary," the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly,

550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

The "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555 (citations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (citations and quotations omitted).  Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," which simply "are not entitled to [an] assumption of truth."  See Iqbal, 556 U.S. at 679.  Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Id. at 678 (quoting Twombly, 550 U.S. at 570).

Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id. at 679.  Moreover, when the well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief." Id. (citation omitted).   And, while "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed," Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998), "'this leniency does not give the court a license to serve as de facto counsel for a party or to rewrite an otherwise deficient pleading in order to sustain an action.'" Alford v. Consol. Gov't of Columbus, Ga., 438 F. App'x 837, 839 (11th Cir. 2011)[4] (quoting GJR Invs., Inc. v. Cnty. of Escambia, Fla., 132 F.3d 1359, 1369 (11th Cir. 1998) (internal citation omitted), overruled in part on other grounds as recognized in Randall, 610 F.3d at 706; see also Campbell v. Air Jamaica Ltd., 760 F.3d 1165, 1168–69 (11th Cir. 2014).

Additionally, in considering a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the Court must determine whether the Plaintiff, as the party "seeking the exercise of personal jurisdiction over a nonresident defendant," has satisfied "the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." See United Techs. Corp. v. Mazer, 556 F.3d 1260, 1274 (11th Cir. 2009).   Where a

---

[4] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point.   See McNamara v. GEICO, 30 F.4th 1055, 1060–61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36–2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

defendant "challenges jurisdiction by submitting affidavit evidence in support of its position, 'the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction.'"   See id. (quoting Meier ex rel. Meier v. Sun Int'l Hotels, Ltd., 288 F.3d 1264, 1269 (11th Cir. 2002)).   In ruling on a motion to dismiss for lack of personal jurisdiction, a district court has discretion to conduct an evidentiary hearing.   See Delong Equip. Co. v. Wash. Mills Abrasive Co., 840 F.2d 843, 845 (11th Cir. 1988).   However, where the court does not conduct a hearing, "the plaintiff must present only a prima facie showing of . . . personal jurisdiction."   Id.

A plaintiff makes a prima facie showing by presenting evidence sufficient to withstand a motion for directed verdict (now judgment as a matter of law)[5] on the issue of personal jurisdiction.   Morris v. SSE, Inc., 843 F.2d 489, 492 (11th Cir. 1988).   Thus, "[t]he district court must construe the allegations in the complaint as true, to the extent they are uncontroverted by defendant's affidavits[,]"   and   "where   the   evidence   presented   by   the   parties' affidavits . . . conflicts, the court must construe all reasonable inferences in favor of the non-movant plaintiff."   Id.   (citing Delong Equip. Co., 840 F.2d at 845); see also United Techs. Corp., 556 F.3d at 1274 (citing Polski Linie Oceaniczne v. Seasafe Transp. A/S, 795 F.2d 968, 972 (11th Cir. 1986)) (noting

---

[5] See Charles v. Johnson, 18 F.4th 686, 695 (11th Cir. 2021) (citing Fed. R. Civ. P. 50).

that, if the defendant rebuts the jurisdictional allegations in the plaintiff's complaint, "the plaintiff is required to substantiate [its] jurisdictional allegations . . . by affidavits or other competent[proof, and not merely reiterate the factual allegations in the complaint"). This construction in favor of the plaintiff is particularly necessary where the jurisdictional questions are intertwined with the merits of a case. See Delong Equip. Co., 840 F.2d at 845.

### III. Discussion

In this Order, the Court first considers whether Rothenberg has made an unrebutted prima facie showing of personal jurisdiction.[6]  See Madara v. Hall, 916 F.2d 1510, 1513–14 (11th Cir. 1990) (explaining that a motion to dismiss for lack of personal jurisdiction should be analyzed before a motion to dismiss for failure to state a claim). Because the Court determines that he has, the Court turns next to the merits of Rothenberg's Complaint. For the reasons discussed, the Court concludes that the Complaint is due to be dismissed for failure to state a claim upon which relief can be granted. However, because

---

[6] Rothenberg argues that he has "already plead[ed] jurisdiction . . . based on diversity of citizenship." Response at 16. But diversity jurisdiction is a form of subject matter jurisdiction—the Court's basic authority to hear "the category of claim" Rothenberg brings. Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 577 (1999); see also Baltin v. Alaron Trading Corp., 128 F.3d 1466, 1469 (11th Cir. 1997) (noting that diversity jurisdiction is a form of subject matter jurisdiction). A court must also have personal jurisdiction, which is power "over the parties . . . so that the court's decision will bind them." Ruhrgas, 526 U.S. at 577 (emphasis added) (explaining that a court needs both forms of jurisdiction to resolve a case on the merits). Here, FedEx challenges the existence of personal jurisdiction, not subject matter jurisdiction. See Motion at 10–12.

Rothenberg is proceeding <u>pro se</u>, the dismissal will be without prejudice and Rothenberg will be permitted to file an amended complaint.

## A. Personal Jurisdiction

### 1. Applicable Law

"A federal district court in Florida may exercise personal jurisdiction over a nonresident defendant to the same extent that a Florida court may, so long as the exercise is consistent with federal due process requirements." <u>See</u> <u>Licciardello v. Lovelady</u>, 544 F.3d 1280, 1283 (11th Cir. 2008). "If both Florida law and the United States Constitution permit, the federal district court may exercise jurisdiction over the nonresident defendant." <u>Id.</u> Thus, to determine whether personal jurisdiction exists over FedEx, the Court must engage in a two-part inquiry. <u>See</u> <u>Mut. Serv. Ins. Co. v. Frit Indus., Inc.</u>, 358 F.3d 1312, 1319 (11th Cir. 2004). First, the Court must determine "whether the exercise of jurisdiction is appropriate under [Florida]'s long-arm statute." <u>Id.</u> (citing <u>Sculptchair, Inc. v. Century Arts, Ltd.</u>, 94 F.3d 623, 626 (11th Cir. 1996)). Second, the Court must consider whether exercising personal jurisdiction over FedEx is consistent with "the Due Process Clause of the Fourteenth Amendment to the United States Constitution, which requires that the defendant have minimum contacts with the forum state and that the exercise of jurisdiction over the defendant does not offend 'traditional notions of fair play and substantial justice.'" <u>Id.</u> (quoting <u>Sculptchair, Inc.</u>, 94 F.3d at 626). "Only

if both prongs of the analysis are satisfied may a federal or state court exercise personal jurisdiction over a nonresident defendant." Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253, 256 (11th Cir. 1996) (internal quotations omitted).

### i.   Florida's Long-Arm Statute[7]

The reach of Florida's long-arm statute is a question of Florida law.  See Meier, 288 F.3d at 1271.   Thus, this Court must construe the long-arm statute as would the Florida Supreme Court, and, absent some indication that the Florida Supreme Court would hold otherwise, this Court is bound to adhere to decisions of Florida's intermediate courts.  See id.   Florida's long-arm statute provides in pertinent part:

> (1)(a) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:

---

[7] The Court notes that Florida's long-arm statute—Florida Statutes section 48.193—confers two types of jurisdiction.  See Nw. Aircraft Capital Corp. v. Stewart, 842 So. 2d 190, 193–95 (Fla. Dist. Ct. App. 2003).   First, section 48.193(1) lists enumerated acts which will confer specific personal jurisdiction over a defendant for suits arising from those acts.  See Fla. Stat. § 48.193(1).   Next, section 48.193(2) "provides that Florida courts may exercise general personal jurisdiction" if the defendant engages in "substantial and not isolated activity in Florida[,]" whether or not the claims asserted actually involve the defendant's activities in Florida.  See Carmouche v. Tamborlee Mgmt., Inc., 789 F.3d 1201, 1203–04 (11th Cir. 2015) (emphasis in original).   In his Response, Rothenberg appears to argue for specific personal jurisdiction because he alleges that he "has been subjected to misconduct" by FedEx in the state and that the Court thus has "specific jurisdiction."  See Response at 16.   Because the Court concludes that Rothenberg makes a prima facie showing of specific personal jurisdiction, it does not address the issue of whether it has general personal jurisdiction over FedEx.

1. Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.

2. Committing a tortious act within this state.

Fla. Stat. § 48.193.[8]   While the term "'arising from'" as used in Florida Statutes section 48.193(1)(a) "does not mean proximately caused by, it does require direct affiliation, nexus, or substantial connection to exist between the basis for the plaintiff['s] cause of action and the defendant['s action falling under the long-arm statute]."   Nw Aircraft Capital Corp., 842 So. 2d at 194; see also Glovegold Shipping, Ltd. v. Sveriges Angfartygs Assurans Forening, 791 So. 2d 4, 10 (Fla. Dist. Ct. App. 2000).

## ii.   Constitutional Due Process

In addition to the issue of long-arm jurisdiction, the Court must consider whether the exercise of personal jurisdiction over FedEx in this case "would violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution, which requires that the defendant have minimum contacts with the forum state and that the exercise of jurisdiction over the defendant does not offend 'traditional notions of fair play and substantial justice.'"   Mut.

---

[8] Although Rothenberg does not allege a specific basis for personal jurisdiction under Florida's long-arm statute, subsections (1)(a)1. and (1)(a)2. appear most directly applicable to his claims.   Notably, FedEx does not address the reach of Florida's long-arm statute, instead choosing to focus its arguments solely on whether the exercise of personal jurisdiction here would offend constitutional due process.   The Court, nevertheless, will first determine whether the exercise of jurisdiction is authorized by the long-arm statute.

Serv. Ins. Co., 358 F.3d at 1319 (quoting Sculptchair, Inc., 94 F.3d at 626).    A determination of whether exercising personal jurisdiction comports with the requirements of due process also requires a two-part inquiry.    See Sculptchair, Inc., 94 F.3d at 630–31 (11th Cir. 1996).    First the Court looks to see whether Defendant has sufficient "minimum contacts" with the state of Florida.    See id. at 630.    In Licciardello, the Eleventh Circuit explained that:

> [t]he Constitution prohibits the exercise of personal jurisdiction over a nonresident defendant unless his contact with the state is such that he has "fair warning" that he may be subject to suit there. This "fair warning" requirement is satisfied if the defendant has "purposefully directed" his activities at residents of the forum, and the litigation results from alleged injuries that "arise out of or relate to" those activities.    In this way, the defendant could have reasonably anticipated being sued in the forum's courts in connection with his activities there.

Licciardello, 544 F.3d at 1284 (internal citations omitted).    Second, the Court determines whether the exercise of jurisdiction over the defendant "would offend 'traditional notions of fair play and substantial justice.'" Sculptchair, Inc., 94 F.3d at 630–31 (quoting Robinson, 74 F.3d at 258).    Relevant factors to this inquiry "include 'the burden on the defendant, the interests of the forum . . . , and the plaintiff's interest in obtaining relief.'" See id. at 631 (quoting Asahi Metal Indus. Co. v. Super. Ct. of Cal., 480 U.S. 102, 113 (1987)).

## 2. Analysis

Construing Rothenberg's pro se Complaint liberally, see Freeman, 820 F. App'x at 838, the Court first considers whether Rothenberg has made a prima

facie showing of personal jurisdiction, and then turns to the question of whether FedEx's affidavit controverts his allegations such that Rothenberg must "'produce evidence supporting jurisdiction.'"[9]   See United Techs. Corp., 556 F.3d at 1274 (quoting Meier, 288 F.3d at 1269).   As an initial matter, the Court notes that to the extent this case is based on specific jurisdiction, the personal jurisdiction inquiry is conducted "as to each claim separately."   See KVAR Energy Sav., Inc. v. Tri-State Energy Solutions, LLP, No. 6:08-cv-85-Orl-19KRS, 2009 WL 103645, at *3 (M.D. Fla. Jan. 15, 2009)[10]; see also Seiferth v. Helicopteros Atuneros, Inc., 472 F.3d 266, 275 (5th Cir. 2006) (citing 5B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure: Civil § 1351, at

---

[9] Although Rothenberg argues that the Court has personal jurisdiction over FedEx because other courts—including the Middle District of Florida—have exercised such jurisdiction in the past, see Response at 11, 15–16, the Court does not credit this argument in its analysis.   First, unlike subject matter jurisdiction, a party may consent to personal jurisdiction even if it is otherwise lacking.   Compare Rule 12(h)(1) (providing for the waiver of a personal jurisdiction defense) with Rule 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").   Accordingly, the fact that FedEx has previously litigated in Florida (or any other state) does not establish that it would be subject to personal jurisdiction in that state for any other case or claim: it may have simply chosen to waive the defense.   Second, several of the cases Rothenberg cites involve FedEx Corporation's subsidiaries, not FedEx Corporation itself.   See, e.g., Satchell v. FedEx Corp., No. C 03-02659 SI, 2005 WL 2397522, at *1 (N.D. Cal. Sept. 28, 2005) (despite the case title, describing the defendant as "FedEx Express," not "FedEx Corporation"); Plaintiff's Response to FedEx Corporation's Motion to Dismiss at 1, Harris v. FedEx Corp., No. 4:21-cv-1651 (S.D. Tex. July 30, 2021) (Doc. 12) (explaining that the plaintiff's amended complaint "substituted FedEx Corporate Services, Inc. in place of FedEx Corporation as a defendant in this case").   And as the Court discusses below, personal jurisdiction over a subsidiary, without more, does not establish personal jurisdiction over its separate parent company.   Accordingly, the Court does not address Rothenberg's cited cases in its analysis.

[10] The Court notes that although decisions of other district courts are not binding, they may be cited as persuasive authority.   See Stone v. First Union Corp., 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects.").

299 n.30 (3d ed. 2004) ("There is no such thing as supplemental specific personal jurisdiction; if separate claims are pled, specific personal jurisdiction must independently exist for each claim and the existence of personal jurisdiction for one claim will not provide the basis for another claim.")).   But because Rothenberg alleges that all of his claims derive from the same deliberate course of conduct and period of time, the Court's analysis applies to all claims equally and the Court will discuss them collectively.[11]

In the claims he raises in this action, Rothenberg asserts that he has been subjected to "assault, defamation[ ] and invasion of privacy, as described [in the Complaint]" in "virtually every instance of being near operations [sic] locations owned by" FedEx—locations that allegedly include Ocala, Florida, and Miami, Florida.   Complaint ¶¶ 3–4.   Rothenberg describes working near FedEx's Florida "sites" and "operations" on "a regular basis" in his capacity as a professional driver.   Id. ¶¶ 3–4.   He later characterizes these sites as being near "distribution centers/terminals."   See id. ¶ 16.

---

[11] As to Rothenberg's first five causes of action—assault, defamation, intrusion upon seclusion, public disclosure of private facts, and intentional infliction of emotional distress—he alleges that these claims arise from an ongoing "course of conduct" that FedEx has "carried out . . . nationwide."   Complaint ¶¶ 5–6.   Given the pervasive and nationwide nature of the conduct Rothenberg alleges in each of these counts, it is a reasonable inference that no count is based on uniquely out-of-state conduct.   And Rothenberg's remaining claim—conspiracy—derives from the same conduct described in the first five.   See Complaint ¶ 32 (stating that FedEx conspired "to subject [Rothenberg] to their tortious conduct described" in the Complaint); see also Banco de los Trabajadores v. Cortez Moreno, 237 So. 3d 1127, 1136 (Fla. Dist. Ct. App. 2018) (explaining that, under Florida law, a conspiracy claim is "inextricably linked with the underlying tort" because it is "a device to allow a plaintiff to spread liability," not a standalone cause of action).

To be sure, these allegations are not a model of clarity.   Rothenberg does not describe the nature of these "sites" or their role in FedEx's commercial operations.   In the context of this case, however, and construing Rothenberg's pro se Complaint liberally, the Court is satisfied that he has pleaded FedEx's ownership and operation of permanent offices in Florida.[12]   Discussing these allegations in his Response, Rothenberg clarifies that while he has been "near" these properties, he has "only ever been on the premises" of a FedEx "distribution center/hub property . . . once in Connecticut" when he "miss[ed] a turn" and there was "no other available turn around."   Response at 6.   This reference to FedEx's "distribution center/hub property" is consistent with the inference that Rothenberg is describing FedEx's commercial facilities in his Complaint.   Accepting the allegations as true, the Court is satisfied that Rothenberg has made a prima facie case—subject to rebuttal by FedEx—that FedEx "ha[s] an office or agency in this state" for purposes of Florida's long-arm statute.   Fla. Stat. § 48.193(1)(a)(1).

The Court is likewise satisfied that Rothenberg has made a prima facie showing that he alleges harms "arising from" FedEx's operation of its offices in the state.   Id. § 48.193(1)(a).   In reaching this conclusion, the Court recognizes

---

[12] Florida law has not defined "what constitutes an office for jurisdictional purposes." Furnari v. Shapewriter, Inc., No. 6:10-cv-1463-Orl-28DAB, 2011 WL 253962, at *4 (M.D. Fla. Jan. 25, 2011).   Notably, however, FedEx does not appear to dispute that Rothenberg is describing the offices of some FedEx entity, and instead argues that FedEx itself is "the wrong entity."   Motion at 10 (emphasis added).

that under Florida law, "[t]he term 'arising from' is broad; it does not mean 'proximately caused by,' but only requires a "'direct affiliation,' 'nexus,' or 'substantial connection'" to exist between the basis for the cause of action and the business activity." Citicorp Ins. Brokers (Marine), Ltd. v. Charman, 635 So. 2d 79, 82 (Fla. Dist. Ct. App. 1994) (quoting Damoth v. Reinitz, 485 So. 2d 881, 883 (Fla. Dist. Ct. App. 1986)).   Here, Rothenberg alleges that he was subjected to the relevant conduct "in virtually every instance" of being near FedEx's operations.   Complaint ¶ 4.   Accepting this as true, it is a reasonable inference that this includes the Miami and Ocala "sites."   See id. ¶ 3. Applying a liberal reading of Rothenberg's pro se Complaint, these allegations show a prima facie basis for the exercise of personal jurisdiction under Florida's long-arm statute.[13]

---

[13] Because Rothenberg has sufficiently (albeit barely) alleged that FedEx has established offices in Florida and that the harm about which he claims is connected to those offices, the Court need not analyze whether it may exercise personal jurisdiction under the subsection of the long-arm statute which applies to committing a tort in Florida.   The Court notes that this section of the statute would require the Court to determine whether Rothenberg states a claim for relief, which would be analyzed as part of the personal jurisdiction question (not on the merits).   See 8100 R.R. Ave. Realty Trust v. R.W. Tansill Const. Co., 638 So. 2d 149, 151 (Fla. Dist. Ct. App. 1994) (distinguishing cases where "the sole basis for jurisdiction [was] that the [defendant] committed a tort in Florida," from those where the basis "was, for example, that the defendant was doing business in Florida"); Posner v. Essex Ins. Co., Ltd., 178 F.3d 1209, 1218 n.11 (11th Cir. 1999) (explaining that failing to state a claim for purposes of personal jurisdiction results in dismissal without prejudice under Rule 12(b)(2), not dismissal with prejudice under 12(b)(6)).   But because this principle does not apply to personal jurisdiction based on a defendant's office in the state, the Court's personal jurisdiction analysis is unaffected—at least for purposes of this Order—by its conclusion that Rothenberg fails to state a claim for relief in his Complaint.   See id.; Stone v. Shafran, No. 22-80369-CV-MIDDLEBROOKS, 2022 WL 18780499, at *5 (S.D. Fla. Nov. 21, 2022) ("[I]f the basis for long-arm jurisdiction is 'doing business in Florida,' then the court does not have to first determine sufficiency of the complaint.").

In his Complaint, Rothenberg likewise provides <u>prima facie</u> evidence that FedEx has sufficient minimum contacts with Florida to satisfy constitutional due process.   As discussed above, he alleges that FedEx has offices in the state from which FedEx personnel engage in the challenged conduct.   It thus appears that FedEx could reasonably anticipate being sued for its conduct in Florida.   <u>See</u> <u>Licciardello</u>, 544 F.3d at 1284.   The Court does not see (and FedEx does not provide) a reason why this is "'one of those rare cases in which minimum requirements inherent in the concept of fair play and substantial justice . . . defeat the reasonableness of jurisdiction even [though] the defendant has purposefully engaged in forum activities.'"   <u>Vermeulen v. Renault, U.S.A., Inc.</u>, 985 F.2d 1534, 1552 (11th Cir. 1993) (quoting <u>Asahi</u>, 480 U.S. at 116). Accordingly, Rothenberg has pleaded a sufficient <u>prima facie</u> case for personal jurisdiction, and FedEx has the burden to produce conflicting evidence.   <u>See</u> <u>Meier</u>, 288 F.3d at 1268–69.

In attempting to meet this burden, FedEx points to the Eslami Declaration, on which it relies to support the assertion that it "has no contacts with" Florida sufficient to confer personal jurisdiction.   <u>See</u> Motion at 12.   But this argument has a problem: the three-paragraph declaration does not contain enough detail to support such a conclusion.   In his declaration, Eslami provides the following information: (1) FedEx Corporation is a "holding company with several wholly-owned subsidiaries," (2) its senior management staff work in

Memphis, Tennessee, and (3) it does not manage or control the day-to-day operations of its subsidiaries.[14]   <u>See</u> Eslami Declaration at 2.   In other words, the declaration supports the conclusion that some (but not all) of FedEx's managerial staff work in Tennessee, and that the company owns some number of subsidiaries that operate independently.   FedEx does not explain why these facts show that it has "no contacts" with Florida and "nothing to do with this action."   Motion at 12.   Indeed, these facts do not even establish that FedEx "does not own/possess/control trucks," "hire/employ/train/supervise truck drivers," or operate "sites" in Florida.   <u>Id.</u>   Significantly, while Eslami describes FedEx as a "holding company," he does not say that it operates <u>only</u> through subsidiaries.   Nor does his declaration dispute that FedEx owns facilities or employs personnel in the state.   Eslami does not even go so far as to say that FedEx has no offices in Florida.   It may be true, as Rothenberg seems to suggest in his Response, that FedEx Corporation's contacts with Florida are limited to the actions of its subsidiaries.   <u>See</u> Response at 11 ("The FedEx Corporation entirely profits from its subsidiaries, as does its publicly traded stock price, both in and out of this forum state of Florida.").   And if so,

_____

[14]   Eslami also identifies FedEx Corporation's state of incorporation and principal place of business, which are Delaware and Tennessee, respectively.   Eslami Declaration at 1–2. While this contradicts Rothenberg's allegation that FedEx is a "Tennessee corporation," Complaint ¶ 4, it does not affect the parties' diversity of citizenship for purposes of subject matter jurisdiction.   <u>See</u> <u>Univ. S. Ala. v. Am. Tobacco Co.</u>, 168 F.3d 405, 412 (11th Cir. 1999) (explaining that "all plaintiffs must be diverse from all defendants" for there to be diversity of citizenship); Complaint ¶ 3 (alleging that Rothenberg is a citizen of Florida).

that may well foreclose this Court's exercise of personal jurisdiction over it for the claims in this action.[15]   But because FedEx has not presented evidence in support of such a conclusion, the allegations of Rothenberg's Complaint—and thus his prima facie showing of personal jurisdiction by virtue of FedEx having offices in the state which are connected to the harm he alleges—remain "uncontroverted by [FedEx's] affidavits."   See Morris, 843 F.2d at 492. Accordingly, at this stage of the proceedings, FedEx has failed to establish that the Court lacks authority to exercise personal jurisdiction over it for these claims.   See Posner, 178 F.3d at 1215 (determining that a conclusory affidavit was "insufficient to shift . . . the burden of producing evidence supporting jurisdiction" regardless of the plaintiffs' "failure to rebut it").

---

[15] "Generally, a foreign parent corporation is not subject to the jurisdiction of a forum state merely because a subsidiary is doing business there."   Meier, 288 F.3d at 1272 (analyzing the relationship between a Delaware corporation and its Florida subsidiaries). However, an exercise of personal jurisdiction over a parent company based on the conduct of its subsidiary may be proper if the subsidiary is "merely an agent through which the parent company conducts business" or "its separate corporate status is formal only and without any semblance of individual identity."   Id.   In his Response, Rothenberg argues that FedEx Corporation and its subsidiaries constitute "a single corporate structure" that is "guided by a single corporate consciousness."   Response at 15–16.   However, he offers no non-conclusory facts to support this, let alone evidence to contradict the assertion that FedEx Corporation exercises no day-to-day control over its subsidiaries.   See Eslami Declaration at 2.   If the allegations in the Complaint suggested that the basis for personal jurisdiction was FedEx's relationship to its subsidiaries, the Eslami Declaration would likely shift the burden to Rothenberg to provide evidence that the separate legal status is purely a formality.   A simple list of subsidiaries would not suffice.   See Subsidiary List.   But because Rothenberg made no allegations about FedEx's subsidiaries in his Complaint, and FedEx does not deny any of his allegations by asserting (for example) that the Miami and Ocala "sites" are actually owned by its subsidiaries, FedEx's argument is simply unavailing at this stage of the proceeding.

## B. Failure to State a Claim

FedEx also argues that Rothenberg fails to state a claim upon which relief can be granted because his allegations "are conclusory and lack the baseline specificity necessary to survive a motion to dismiss." Motion at 8. On this issue, FedEx is correct.[16] While "[s]pecific facts are not necessary" to state a claim for relief, a plaintiff must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson, 551 U.S. at 93 (quoting Twombly, 550 U.S. at 555). To satisfy the obligation of identifying the grounds of his entitlement to relief, a plaintiff must present sufficient factual allegations "to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In other words, he must plead "enough facts to state a claim to relief that is plausible on its face." Id. at 570. As previously noted, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

---

[16] FedEx is mistaken, however, in its contention that Rothenberg "impermissibly seeks punitive damages" because Florida Statutes section 768.72 requires him to seek leave of court before doing so. Motion at 10. "Federal Courts sitting in diversity are required to apply state substantive law and federal procedural law." Cohen v. Office Depot, Inc. (Cohen I), 184 F.3d 1292, 1296 (11th Cir. 1999), vacated in part on other grounds, 204 F.3d 1069. When a state law conflicts with a Federal Rule of Civil Procedure, the Court must apply the Federal Rule. Id. (quoting Hanna v. Plumer, 380 U.S. 460, 471 (1965)). As the Eleventh Circuit has explained, section 768.72 conflicts with Rule 8(a)(3)'s requirement that pleadings identify the remedies sought. Id. at 1297–98. Accordingly, to the extent that a plaintiff must seek leave of court to pursue punitive damages, "the pleading requirements of Florida Statutes § 768.72 are inapplicable in federal diversity cases." Id. at 1299; see also Cohen v. Office Depot, Inc. (Cohen II), 204 F.3d 1069, 1072 (11th Cir. 2000) (partially vacating Cohen I, but leaving intact the rule that a plaintiff in a federal diversity action "need not obtain leave of court before pleading a request for punitive damages").

for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678 (citing <u>Twombly</u>, 550 U.S. at 556).

Here, Rothenberg fails to give FedEx fair notice of the basis of his claims, and simply has not pleaded enough facts to support a reasonable inference that FedEx is liable for the conduct about which he complains. Although Rothenberg asserts that "personnel from the top to the bottom of" FedEx's organization—including "[m]anagement personnel at every level"—have engaged in tortious behavior, Complaint ¶ 8, this allegation is nothing but a broad conclusion, and he does not provide any facts to explain how he knows that his assailants were FedEx employees.[17] Nowhere does Rothenberg identify a single employee by name or description, provide examples of any specific incident in which he experienced the untoward conduct, or explain how he attributes that conduct to FedEx employees. Instead, he refers to an exceedingly vague and wide range of tortious behavior from "a variety of parties" at a multitude of locations. <u>See</u> <u>id.</u> ¶ 10 (describing this conduct as occurring "within the scope of [Rothenberg's] employment," at "hotel rooms," at Rothenberg's home, and at "other places of note").

---

[17] As Rothenberg notes, in his related cases he alleges that Wal-Mart, Costco, Target, and Knight Swift Transportation have engaged in "a nearly identical course of conduct." Response ¶ 1. And in this case, he acknowledges that he "has only ever been on the premises of the distribution center/hub property owned by [FedEx] once in Connecticut." <u>Id.</u> ¶ 16. This makes it even less clear why Rothenberg believes that employees of FedEx are responsible.

While Rothenberg generally identifies the <u>types</u> of tortious behavior about which he complains, he fails to provide any factual assertions supporting his claims, and instead relies entirely on broad, vague, and wholly conclusory statements.   In his claim for defamation, for example, Rothenberg describes assertions "that the Plaintiff is a rapist, a murderer, a cop killer, [and] a serial killer," among several other things.   <u>See</u> <u>id.</u> ¶ 13.   But he does not present any factual allegations regarding the circumstances of any particular statement, such as where or when the statement was made, the person (or persons) who made the statement, or to whom it was made.   He simply states that FedEx "screamed" these statements "nationwide" and "intentionally told [them] to as many persons as possible" as part of a course of conduct that has been ongoing "since 2018."   <u>Id.</u> ¶¶ 12, 14.   Similarly, in his claim for public disclosure of private facts, while he alleges that FedEx disclosed several specific categories of his information, including his "home address, passwords . . . phone number," and banking data, Rothenberg does not provide any factual allegations to support this claim.   He does not suggest when or how FedEx got the information, when or how it was published, who received it, or how Rothenberg learned that this was occurring.   Given the scope of Rothenberg's claims, these allegations simply do not contain enough factual content to state a plausible claim.   Rothenberg's other claims fare no better, as none include "enough facts to state a claim to relief that is plausible on its face."   <u>Twombly</u>, 550 U.S. at

570.   Indeed, the allegations of Rothenberg's Complaint are best described as "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts," which are insufficient to state any plausible claim to relief.   Jackson, 372 F.3d at 1262.   In sum, the Complaint as currently pled neither gives FedEx fair notice of the claims Rothenberg brings nor contains sufficient factual matter to allow the Court to conclude that he states any plausible claim to relief.

The Court recognizes that Rothenberg also refers the Court to bodycam footage that he submitted in another case.   This does little to show the plausibility of his claims for at least two reasons.   First, the videos filed with the Court in connection with other cases are not part of the operative Complaint in this action.   And the Court must determine whether he states a claim by analyzing the well-pled allegations of fact in this Complaint.[18]   Second, while Rothenberg makes the conclusory assertion that the footage "show[s]" that FedEx "conspired with the Defendants in the two related cases filed so far, as well as other parties, to assault, defame, stalk, and invade" his privacy, see id. ¶ 28, he does not explain how or what portion of the videos support his allegations.[19]   Accordingly, the footage does not cure the deficiencies in the

---

[18] Notably, the Defendant must be apprised of the claims brought against it. Rothenberg's references to videos filed with the Court in another case against another defendant utterly fails to give FedEx such notice.

[19] Rothenberg does not cite to or describe any specific video that he believes to show the conduct in question.   As discussed above, and in what is likely an unnecessary abundance

Complaint, as the footage does nothing to nudge Rothenberg's claims "across the line from conceivable to plausible." <u>See</u> <u>Twombly</u>, 550 U.S. at 570.   For these reasons, the Complaint is due to be dismissed.

## C. Leave to Amend

In general, a pro se plaintiff "must be given at least one chance to amend" a complaint before a district court dismisses it with prejudice.  <u>Silberman v. Miami Dade Transit</u>, 927 F.3d 1123, 1132 (11th Cir. 2019) (quoting <u>Woldeab v. Dekalb Cnty. Bd. Of Educ.</u>, 885 F.3d 1289, 1292 (11th Cir. 2018)). Nonetheless, leave to amend is not warranted "if a more carefully drafted complaint could not state a claim." <u>Silberman</u>, 927 F.3d at 1133 (citations omitted).   Here, Rothenberg's Complaint is deficient because the factual allegations are far too vague and conclusory, and lack sufficient detail to state a claim for relief.   Nevertheless, the Court is not so convinced that "a more carefully drafted complaint could not state a claim," <u>id.</u>, to warrant dismissal

---

of caution, the Court viewed portions of the footage despite having significant reservations about its potential use in resolving any motion to dismiss in this case.   Most of the videos appear to have been taken on the highway, though others are filmed at truck stops, hotel rooms, and a home (presumably Rothenberg's).   At no point could the Court discern any conduct approaching what Rothenberg describes in his Complaint.   Because the Court has not viewed the vast majority of the footage, the Court will not assume that the rest is equally unhelpful to Rothenberg's claims.   But Rothenberg is cautioned that if he seeks to rely on the footage in future filings, it is his responsibility to direct the Court—and opposing counsel—to specific portions of any video he believes support his claims, and to specifically explain how he believes that they do.   "Judges are not like pigs, hunting for truffles buried in the record." <u>See</u> <u>Corley v. Rosewood Care Ctr., Inc.</u>, 388 F.3d 990, 1001 (7th Cir. 2004) (internal quotation marks omitted) (declining to "root through the hundreds of documents . . . to make [a plaintiff's] case for him").

with prejudice.   As such, Rothenberg will be given an opportunity to file an amended complaint.[20]   Rothenberg is cautioned that he must carefully review the pleading requirements discussed in this order as well as the requirements of Rules 8 and 10 of the Federal Rules of Civil Procedure.   Failure to satisfy these requirements likely will result in a dismissal of this action with prejudice.

## IV.   Conclusion

For the foregoing reasons, FedEx's Motion is due to be granted in part and denied in part.   To the extent FedEx seeks dismissal of the Complaint based on a lack of personal jurisdiction, the Motion is due to be denied because FedEx has not rebutted Rothenberg's prima facie showing of personal jurisdiction.   Nonetheless, the Motion is due to be granted only to the extent that Rothenberg's Complaint will be dismissed without prejudice because it fails to provide enough facts to state any plausible claim upon which relief can be granted.   Because Rothenberg is proceeding pro se, the Court will allow him to file an amended complaint.

Accordingly, it is

**ORDERED:**

---

[20] In his Response, Rothenberg requested an opportunity to amend his Complaint. The Court denied this request without prejudice because it is procedurally improper to seek affirmative relief in a response rather than by separate motion, and because the request did not comply with Local Rules 3.01(a) and 3.01(g).   See Order (Doc. 10), entered March 8, 2023.   However, this does not prevent the Court from granting leave to amend sua sponte for the reasons described above.

1.  FedEx Corporation's Motion to Dismiss Plaintiff's Complaint and Incorporated Memorandum of Law (Doc. 7) is **GRANTED in part and DENIED in part**:

    a.  The Motion is **GRANTED** to the extent that Rothenberg's Complaint (Doc. 1) is **DISMISSED without prejudice** for failure to state a claim upon which relief can be granted.

    b.  The Motion is otherwise **DENIED.**

2.  Rothenberg may file an amended complaint no later than **JULY 27, 2023**.

**DONE AND ORDERED** in Jacksonville, Florida this 5th day of July, 2023.

**MARCIA MORALES HOWARD**
United States District Judge

lc31

Copies to:

Counsel of Record
Pro Se Party